UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MUSIC,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION, et al.,<br><br>    Defendants. | Case No. 14-cv-04776-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 59 |

## I. INTRODUCTION

Defendant Bank of America, NA ("Bank of America" or the "Bank") moves to dismiss Plaintiff Michael Music's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). The FAC arises out of a dispute over the handling and distribution of hazard insurance proceeds that were paid out to the parties after a fire caused damage to property Music owned. Music contends that the Deed of Trust ("Deed") entitled him to finance repair of the property using the proceeds. Bank of America, representing its successor by merger Defendant BAC Home Loans Servicing, LP ("BAC"), contends that the Deed permitted it to instead retain the proceeds and apply them toward the outstanding loan balance on Music's Promissory Note ("Note"). Music later defaulted on the Note, and Defendant Bayview Loan Servicing, LLC ("BLS") eventually acquired the debt.

Music brought suit against Bank of America, BAC, and BLS. As against all defendants,[1] the FAC alleged claims based on breach of contract and breach of the implied covenant of good faith and fair dealing. As against BLS solely, the FAC also alleged fraud and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* The Court heard arguments on Bank

---

[1] All parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

of America's Rule 12(b)(6) Motion on December 4, 2015 at 9:30 a.m.  For the reasons discussed below, the Court hereby GRANTS the Motion.

## II.   FACTS

### A.   The First Amended Complaint

The FAC alleges the following.  Music and a third party, Tracy Ann Keveny, held interests as tenants in common to property located at 66 Rondel Place in San Francisco (the "Property").  FAC (dkt. 57) ¶ 7.  The two jointly rented out the Property, from which they collected rental income.  *Id.* ¶ 12.  In March 2007, Music and Keveny refinanced a preexisting loan on the Property and executed a Promissory Note in the amount of $290,000, secured by a Deed of Trust.  *Id.* ¶ 9.  Bank of America later acquired interests to the Note and the Deed.  *Id.* ¶ 9.  Keveny died in June 2009.  *Id.* ¶ 10.  In May 2010, the executor of Keveny's estate brought an action against Music and Bank of America to partition the Property and quiet title (the "Keveny Action").  *Id.* ¶ 9.

On August 14, 2010, a fire broke out on the Property causing substantial damage and rendering it uninhabitable.  *Id.* ¶ 13.  As of that date, Music was current on all loan payments required under the Note, and had also adequately maintained hazard insurance on the Property, as he was required under terms set forth in Section 5 of the Deed.  *Id.* ¶¶ 12, 18; Request for Judicial Notice in Support of the Motion to Dismiss ("RJN," dkt. 60), Ex. A (Deed of Trust) § 5.

Following the fire, Music contacted Bank of America to report the incident and to request a forbearance or deferment of his regular loan payment obligations.  *Id.* ¶ 14.  Music claims that the Bank's website "encouraged borrowers who faced a financial hardship to contact [the Bank] for temporary assistance," although he concedes that he "could not locate any discussion or instructions on the website specific to deferment or forbearance as a result of a fire and the reconstruction process after a fire."  *Id.*  Music alleges that despite numerous attempts to contact Bank of America about his loan obligations, the Bank refused to cooperate with him to reach a tenable repayment solution.  *Id.* ¶¶ 14–16.  He claims, for instance, that in the "multiple times" he called the Bank, he "either was put into voice mail, or spoke with a different [Bank of America] representative who knew nothing about Plaintiff or the fire loss, and who could not obtain

2

information to discuss the problem." *Id.* ¶ 15. Music claims that when he was finally able to reach a representative knowledgeable about the Property, the Bank claimed that it "would send paperwork," though those papers never reached him. *Id.* Ultimately, Music's attempts to reach a repayment solution with Bank of America proved unsuccessful. *Id.* ¶¶ 15–16. Because he could no longer collect rental income on the Property, he was unable to meet his monthly loan payments and defaulted on the Note in October 2010. *Id.* ¶ 17.

The insurer issued a check in the amount of $215,000 made payable to Music, Keveny's estate, and Bank of America, which the parties received on December 2, 2010. *Id.* ¶ 18. Music requested Bank of America to release those insurance proceeds and allow him to finance reconstruction of the Property. *Id.* Here, too, Music alleges he had difficulty reaching the Bank:

> Because [Bank of America] was a loss payee on the check, Plaintiff requested of [the Bank] that it utilize the proceeds of insurance so that Plaintiff could continue the process of rebuilding the Property. [Bank of America] initially failed to respond to Plaintiff's request. Then, [the Bank] claimed it needed to "investigate" the request. Finally, in August 2011, over a year after the fire, and without ever inspecting the Property or obtaining estimates from qualified contractors or appraisers, [Bank of America] took the position that the mortgage loan on the Property provided that if [the Bank] determined that repair of the Property was not "economically feasible" or if [the Bank's] security interest would be impaired, then it could apply the insurance proceeds to the unpaid loan balance. [Bank of America] unilaterally determined both that the repair was not economically feasible and that such repair would impair [the Bank's] security interest and as such intended to apply the insurance proceeds to the unpaid loan balance. Plaintiff demanded that [Bank of America] state the factual basis for its belief that the repair of the Property was not economically feasible and that such repair would impair [the Bank's] security interest, but [the Bank] refused to do so.

*Id.*

In July 2012, Music reached an agreement with Keveny's estate to buy out the estate's remaining interests in the Property. *Id.* ¶ 19. As to the insurance proceeds, however, Music, the estate, and Bank of America were unable to resolve how those funds would be distributed. *Id.* He claimed that Section 5 of the Deed set forth terms requiring the funds to be released to him to allow for repair and reconstruction. Opposition to the Motion to Dismiss ("Opp.," dkt. 66) at 3–4. Bank of America claimed that Section 5 instead permitted the Bank to retain the funds and apply them toward the balance of Music's outstanding loan. Motion to Dismiss ("MTD," dkt. 59) at 7.

3

1   The papers are silent as to the estate's claim to the funds.  Because the dispute over the insurance

2   proceeds remained unsettled, all three parties agreed to preserve their rights to that money in the

3   following stipulated agreement:

>    The parties acknowledge and agree that all issues related to the disposition of the fire insurance check in the amount of $215,000, and any obligations and defaults under the Note and Deed of Trust, are specifically excluded from the lawsuit, the settlement and releases, and that the parties reserve their respective rights with regard to such matters.

*Id.* ¶ 19.

Music took preliminary steps to repair the Property by hiring an architect who developed plans and specifications for reconstruction, and who also secured from the City of San Francisco necessary entitlements and permits.  *Id.* ¶ 18.  He alleges that because Bank of America refused to release the insurance proceeds, he was ultimately unable to proceed further with reconstruction.  *Id.* ¶ 19.  The Property was never rebuilt.  *Id.*

BLS acquired Music's debt in October 2012.  *Id.* ¶ 14.  Music eventually sold the Property at a loss in March 2014.  *Id.* ¶ 15.  As part of the sale, BLS was required to furnish a loan payoff demand letter, which it issued on April 8, 2014.  *Id.* ¶ 21.  The letter contained a charge labeled "Recoverable Corporate Advance Balance," in the amount of $46,850.99.  *Id.*  Music claims that this charge was intentionally mislabeled and that, in actuality, it reflected legal fees that Bank of America incurred over the course of the partition and quiet title action with Keveny's estate.  *Id.*  He claims that this charge was improper according to the terms set forth in the Note.  *Id.*  On September 4, 2014, escrow for the sale of the Property closed, and included the payoff charge to BLS.  *Id.*

### B.  Procedural History

On October 27, 2014, Music filed a Complaint against Defendants Bank of America, BAC, and BLS.  Complaint (dkt. 1).  As to Bank of America, the Complaint alleged claims based on breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional and negligent interference with prospective economic advantage.  *Id.* ¶¶ 16–35.

On July 16, 2015, Bank of America moved for judgment on the pleadings pursuant to

4

Federal Rule of Civil Procedure 12(c). Motion for Judgment on the Pleadings (dkt. 45). On September 1, 2015, this Court issued an order on the motion dismissing with leave to amend Music's interference claims, as well as his breach of contract and implied covenant claims with respect to the Promissory Note. Order on the Motion for Judgment on the Pleadings (dkt. 54) at 6–7. However, the order denied the motion to the extent the Complaint alleged breach of contract and breach of the implied covenant with respect to the Deed of Trust. *Id.* at 8–14.

On October 1, 2015, Music filed an FAC alleging only breach of contract and breach of the implied covenant claims against Bank of America.[2] FAC. The breach of contract claim in Count One alleged that Bank of America breached terms set forth in both the Deed of Trust and the Promissory Note. *Id.* ¶¶ 22–27. Specifically as to the Deed, Music alleged that the Bank "failed to timely inspect the Property after the fire," and "failed to timely obtain estimates or appraisals from qualified contractors, inspectors or appraisers concerning the fire loss and the cost of rebuilding the Property." *Id.* ¶ 24. He also alleged that the Bank "refused to allow [him] to use proceeds from the fire insurance policy to rebuild the Property after [Bank of America] could not demonstrate to [him] how the repair of the Property was not 'economically feasible' or how [the Bank's] security interest would be decreased if the Property were rebuilt." *Id.* As to the Note, Music alleged that Bank of America impermissibly charged attorney's fees as a line item in the loan payoff demand letter that BLS issued to Music prior to closing in September 2014. *Id.* ¶¶ 24, 26. Music claimed that this charge, intentionally mislabeled as a "Recoverable Corporate Advance Balance," breached terms set forth in the Note. *Id.* Count Two raised an implied covenant cause of action, alleging that Bank of America acted in bad faith when it failed to timely make inspections and appraisals after the fire, and when it withheld the insurance proceeds. *Id.* ¶¶ 30–33.

On October 7, 2015, Music agreed to dismiss claims against BLS. Updated Joint Case Management Conference Statement (dkt. 61) at 7.

Bank of America filed the present Motion to Dismiss the FAC on October 19, 2015

---

[2] Counts Three and Four set forth causes of action against BLS only. *Id.* ¶¶ 34–45.

1  pursuant to Federal Rule of Civil Procedure 12(b)(6). MTD. The Court heard arguments on the
2  Motion on December 4, 2015.

### III. ANALYSIS[3]

#### A. Motion to Dismiss Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Federal Rule of Civil Procedure 8(a) states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

In ruling on motions to dismiss under Rule 12(b)(6), courts "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on the lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning

---

[3] The Court takes judicial notice of the Deed of Trust and the Promissory Note without converting this Motion to one for summary judgment. *Lopez v. Wachovia Mortg.*, No. C 10-01645 WHA, 2010 U.S. Dist. LEXIS 143274, *2 n.1 (N.D. Cal. Sept. 10, 2010). The Deed is part of the public record and is easily verifiable. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Moreover, the FAC refers to the Note, the Note forms a central part of Music's theory of liability against Bank of America, and neither party questions the authenticity of the document provided. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citing *Branch v. Tunnell*, 14 F.3d 449, 453–54 (8th Cir. 1994)); Fed. R. Evid. 201(b).

6

that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556, 570).

### B. Count One (Breach of Contract)

Count One alleges a breach of contract cause of action as to both the Deed of Trust and the Promissory Note.

#### 1. The Deed of Trust

Music alleges that Bank of America breached terms set forth in the Deed of Trust first, by failing to inspect and appraise the Property in a timely manner following the fire and second, by withholding insurance proceeds.

##### a. Timely Inspection and Appraisal

To the extent Count One alleges a breach of contract cause of action against Bank of America based on allegations that the Bank failed to timely inspect or appraise the Property after the fire, it is dismissed for failure to state a claim. To set forth a breach of contract claim, a plaintiff must show: (1) the existence of a valid contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) damages. *McFall v. Stacy & Witbeck, Inc.*, No. 14-cv-04150-JSC, 2014 U.S. Dist. LEXIS 171128, *12 (N.D. Cal. Dec. 10, 2014) (citing *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968)). Here, Music fails to set forth even the first element of that claim—that is, he fails to plead any facts to show that Bank of America was under a contractual obligation to make timely inspections or appraisals. The FAC makes no reference to any such contractual provision in the Deed, nor does Music set forth any allegations that such an agreement existed. Moreover, the Deed itself contains no such provision. In the absence of a contract obligating Bank of America to perform in such a manner, "there could be no breach." *ACP, Inc. v. Skypatrol, LLC*, No. C 13-1572 PJH, 2013 U.S. Dist. LEXIS 107700, *15 (N.D. Cal. July 31, 2013). Music has already been giving a chance to amend to state a claim, and suggests no facts he could allege to show that a specific provision of the Deed was violated by the failure to inspect and appraise. Accordingly, to the extent Count One alleges breach based on allegations that Bank of America failed to undertake timely inspections or appraisals, those claims

are dismissed without leave to amend.

           b.   The Insurance Proceeds

Count One also alleges a breach of contract cause of action based on allegations that the Bank impermissibly withheld the insurance proceeds from Music. Section 5 of the Deed specified that unless certain conditions were met, Bank of America was required to release those proceeds and allow Music to finance the repair of the Property. Music alleges that because those conditions were not met, the Bank's withholding breached the terms set forth in the Deed. Bank of America disputes these allegations and argues that the Court should dismiss this claim because Music fails to establish breach.

Neither party disputes that Section 5 of the Deed of Trust constituted a valid contract. Section 5 required Music to obtain hazard insurance for the Property, and it also governed what occurred to proceeds issued pursuant to that insurance policy. It stated in relevant part:

> Borrower shall keep the improvements now existing and hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. . . .
>
> . . . .
>
> *. . . Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.* During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. . . . *If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. . . .*

RJN, Ex. A ¶ 5 (emphasis added). By its terms, Section 5 established specific conditions that must

be met before any hazard insurance proceeds could be disbursed and used for reconstructing the Property. They were: (1) the reconstruction must be economically feasible; and (2) disbursing the proceeds to Music must not impair the Bank's interest that the Property was intended to secure. Upon the satisfaction of both of these requirements, the insurance proceeds "shall be applied" toward reconstruction. Conversely, if either of these requirements was not met, the proceeds "shall be applied" to Music's outstanding debt.

Here, Music fails to show that Bank of America's actions in withholding the insurance proceeds was a breach. To set forth this element, Music must allege both that reconstruction would have been economically feasible, and that the Bank's interests secured by the Property were not impaired. Music fails to allege that the Bank's security interests were not impaired. The FAC sets forth the following relevant timeline of events. On August 14, 2010, a fire caused substantial damage to the Property and rendered it uninhabitable. Music was unable to make his monthly loan payments and therefore defaulted on his loan in October 2010. On December 2, 2010, the parties received a check in the amount of $215,000, paid out from the hazard insurance policy. Finally, in August 2011, Bank of America informed Music that it would retain the proceeds to pay down Music's outstanding loan balance. It is this failure to pay over the proceeds that Music alleges is a breach.

Music's claim overlooks the fact that he had been in default even before the parties received the proceeds in December 2010. In fact, as of the date of the Bank's alleged breach in August 2011, Music had been in default on his loan obligations for ten months. Music, as the party "'unwilling or unable to continue making payments on the property' . . . ha[d] frustrated 'the purpose of the note and deed of trust.'" *Ford v. Mfrs. Hanover Mortg. Corp.*, 831 F.2d 1520 (9th Cir. 1987) (quoting *Schoolcraft v. Ross*, 81 Cal. App. 3d 75, 80 (1978); *Milstein v. Sec. Pac. Nat'l Bank*, 27 Cal. App. 3d 482, 487 (1972)).

In *Pressler v. American Home Mortgage Servicing*, No. CV 11-6400 CRB, 2013 U.S. Dist. LEXIS 47134, *2–3 (N.D. Cal. Mar. 29, 2013), this Court considered contract language identical to the one that Music presents here in Section 5. *Pressler* involved a dispute over the distribution of hazard insurance proceeds after a home belonging to the plaintiffs, Presslers, sustained

substantial fire damage. *Id.* at *4. The operative provision in the deed of trust stated that, "[u]nless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened." *Id.* at *2. Likewise, that provision also stated that, "[i]f the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower." *Id.* at *3. The insurance policy thereafter issued a check in the amount of $356,420.10, for which the parties agreed would be applied toward reconstructing the home. *Id.* at *4. Construction later stalled, however, and the Presslers eventually defaulted on their loan. *Id.* at *4–5. The lender refused to make any further disbursements, and chose instead to retain the remaining $49,628.87. *Id.* at *5. The Presslers filed suit against the lender alleging, among other things, that the lender breached the terms of the deed. *Id.*

On the lender's motion for summary judgment, the Court drew a distinction between the Presslers' pre-default and post-default claims. *Id.* at *11–15. It denied the motion as to the pre-default claims, reasoning that factual issues remained "as to the Lender's performance of its contractual obligations prior to the Presslers' default." *Id.* at *13. However, the Court granted the motion as to the post-default claims. *Id.* at *11–12. Citing to *Ford*, the Court explained that once the Presslers defaulted, the lender was entitled to retain the insurance proceeds:

> Once the Presslers defaulted, Lender was under no obligation to release additional funds. *See Ford*[, 831 F.2d at 1524]; *Cal. Fair Plan v. Boktor*, No. B160299, 2003 Cal. App. Unpub. LEXIS 11450, *12–13 (Cal. Ct. App. 2003) (unpublished). The Presslers offer no argument or authority to the contrary in their opposition brief. The stipulated facts concede that the Presslers defaulted in November 2009. Stip. Facts ¶ 17. Accordingly, to the extent the Presslers argue that Lender had some obligation to release additional funds after their November 2009 default, the Court GRANTS Lender's motion for summary judgment.

*Id.* at *11–12.

Here, like in *Pressler*, Section 5 entitled Bank of America to retain the insurance proceeds and pay down Music's outstanding loan balance, "if . . . Lender's security would be lessened."

10

RJN, Ex. A ¶ 5. The allegations in the FAC reveal that by the time the parties received the insurance proceeds in December 2010, Music had already defaulted on his loan two months prior, in October. As *Pressler* indicated, once Music defaulted, Bank of America "was under no obligation to release additional funds." 2013 U.S. Dist. LEXIS 47134, at *11. Music therefore fails to show on these facts that the Bank's withholding constituted breach.

Moreover, the FAC indicates that Music failed to perform in accordance with terms set forth in the Deed. Section 1 contained covenants requiring Music to make monthly loan payments as described in the Promissory Note. Music concedes that he failed to do so and defaulted on his loan. Music, as the non-performing party here, cannot validly bring a breach of contract claim or secure further performance from the promisee, Bank of America, on that basis. *McFall*, 2014 U.S. Dist. LEXIS 171128, at *12; *see also De Burgh v. De Burgh*, 39 Cal. 2d 858, 863 (1952); *Brown v. Grimes*, 192 Cal. App. 4th 265, 277–78 (2011); Cal. Civ. Code § 1439 ("Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself; and must be able and offer to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party . . . .").

Music seems to argue that he should be excused from his failure to perform because it was the Bank, through its pattern of delay and non-responsiveness, who rendered it impossible for him to repay. *See* Opp. at 7 (claiming that Bank of America's misconduct should excuse his non-payment). This argument is unpersuasive. As an initial matter, "California law requires a plaintiff to identify excuses for non-performance with specificity in the pleadings." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1389 (1990) (citing 4 Witkin, Cal. Proc. 5th (2008) Pleading § 533). Music fails to do so here, as the FAC does not raise any excuse at all, much less one "with specificity." In addition, the mere fact that performance of a contractual obligation was made more difficult or expensive than what Music anticipated at the time of contract formation does not, by itself, excuse him from the obligation to perform. *See Metzler v. Thye*, 163 Cal. 95, 97–99 (1912); Lord, Williston on Contracts § 77:15 (4th ed. 2003); Restatement (Second) of Contracts § 261, Comment *a* (1979).

In essence, Music's argument presumes an attenuated causal chain of events: Bank of

America prevented him from reconstructing the Property and therefore prevented him from renting it out to tenants; because he could not rent out the Property, he could not receive rental income from it; and, because he could not receive rental income, he could not repay his loan. It was therefore the Bank's actions, Music argues, that caused him to default. Even assuming these allegations to be true, none of these circumstances discharged Music's repayment obligations. Music, as the borrower under the Note and Deed, was required to make regular loan payments on time and in full, on a monthly basis. However Music chose to make those payments was irrelevant for the purposes of the contract. Here, Music chose to finance his loan through rental income collected on the very Property securing the loan. Doing so may have presented a viable method for Music to finance his loan payments, but it also compounded the risk he bore should the Property incur damage or became uninhabitable, as was the case here. Although the fire was an unexpected event that made repayment more difficult, it did not excuse Music from performing in accordance with his contractual obligations.

Consequently, Music fails to state a claim for breach of contract of the Deed of Trust because he failed to perform in accordance with the terms set forth in the Deed, and failed to set forth facts showing that Bank of America's actions in withholding the proceeds constituted breach. Because no amendment would cure this defect, to the extent Music alleges that Bank of America's withholding constituted breach, those claims are dismissed without leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### 2. The Promissory Note

Music also alleges a breach of contract claim with respect to the Promissory Note. He claims that the Note permitted Bank of America to charge him only certain types of loan-related fees. The Bank allegedly charged him a fee labeled "Recoverable Corporate Advance Balance." Music claims that this fee was deceptively mislabeled and that it was, in actuality, attorneys' fees the Bank incurred in the Keveny Action. He argues that charging him these fees was prohibited, and that Bank of America "knowingly and improperly created and asserted the charge against [him] in breach of the terms of the note." The FAC fails to reference any specific provision of the Note that Bank of America allegedly breached, although Music later identifies Section 6 in his

12

1 opposition brief as the relevant provision. Opp. at 12. In any case, the Court finds these claims

2 unable to withstand dismissal.

3 The "short and plain statement" under Rule 8(a)(2) of the Federal Rules of Civil Procedure

4 requires Music to plead "enough facts to state a claim to relief that is plausible on its face."

5 *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 (requiring that "the plaintiff plead

6 factual content that allows the court to draw the reasonable inference that the defendant is liable

7 for the misconduct alleged"). Although in a motion to dismiss the Court must "accept factual

8 allegations in the complaint as true and construe the pleadings in the light most favorable to the

9 nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

10 2008), it "is not . . . forced to 'assume the truth of legal conclusions merely because they are cast

11 in the form of factual allegations.'" *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120 (N.D. Cal. Feb.

12 20, 2014) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)). Nor is the court

13 required to "'accept as true allegations that contradict matters properly subject to judicial notice or

14 by exhibit.'" *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell*

15 *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted), *amended on other*

16 *grounds*, 275 F.3d 1187 (9th Cir. 2001)). Rather, Rule 8(a) requires the plaintiff to plead

17 sufficient factual allegations to "allow[] the court to draw the reasonable inference that the

18 defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Any complaint that does

19 not meet this requirement can be dismissed pursuant to Rule 12(b)(6).

20 Here, a plain reading of Section 6's terms does not support Music's allegations. It states in

21 full:

22
23
24
25
26
27
> If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial payment.

Opp., Ex. A (Promissory Note). Contrary to Music's claims, Section 6 does not "provide[] that

28

only specified loan charges" are permitted under the Note. FAC ¶ 24. Rather, Section 6 concerns the effect that a statute or regulation may later have on amounts charged under the Note. If the Note is later found to charge a borrower in excess of a lawfully-determined amount, then Section 6 specifies the consequences of that determination on the amounts due. It also specifies the manner in which the note holder—in this case, Bank of America—may remedy the excess charge. Furthermore, in the absence of any references to other relevant provisions of the Note, Music's allegations that Bank of America breached the Note are mere legal conclusions about the Bank's liability. Music was given a chance to amend his pleadings to state a claim as to the Promissory Note, but still has failed to do so. Accordingly, the Court dismisses with prejudice Music's claim to the extent it alleges that Bank of America breached the terms set forth in the Promissory Note.

### 3. Equitable Estoppel

Music raises an equitable estoppel theory, claiming that Bank of America engaged in a pattern of delay and should therefore be prevented from using Music's default as a reason to retain the insurance proceeds. This claim, however, fails to set forth the required showing under the estoppel doctrine. Equitable estoppel "'provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment.'" *People v. Castillo*, 49 Cal. 4th 145, 156 n.10 (2010) (quoting *City of Goleta v. Superior Court*, 40 Cal. 4th 270, 279 (2006)). In California, "[a] valid claim for equitable estoppel requires: (a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it." *Simmons v. Ghaderi*, 44 Cal. 4th 570, 584 (2008) (citing 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 191, 527–28). "There can be no estoppel if one of these elements is missing." *Id.*

Here, Music fails to set forth the first element required under the doctrine. He alleges that Bank of America failed to respond to calls and inquiries he made to the Bank following the fire about loan forbearance or deferment. Moreover, he claims that when he was able to reach the Bank, Bank representatives engaged in a pattern of delay before finally issuing a decision on his

14

claim in August 2011 regarding the disposition of the insurance proceeds. He claims that these actions by the Bank caused his default and eventual loss of the Property. As such, he now argues, the Bank ought to be equitably estopped from invoking his default as reason to withhold the insurance proceeds.

None of these allegations, however, evidence a "representation or concealment of material facts" the Bank made to Music about the status of his loan repayment options. For instance, Music fails to plead any facts that Bank representatives communicated a willingness to offer alternative loan repayment options for Music's outstanding loan. Likewise, there is no evidence that the Bank concealed any facts that would otherwise impede Music from fulfilling his loan obligations. Rather, the express terms set forth in the Note and the Deed contained the obligations that each party had to the other. Under these mutually-agreed upon terms, Bank of America was entitled to retain those proceeds upon Music's default. Moreover, Music has also pled that he was unable to keep up payments on the loan because of the loss of rental payment due to the fire. The Bank had nothing to do with that. Because Music fails to plead facts that Bank of America either represented or concealed material facts regarding his loan obligations, he fails to set forth the required showing under equitable estoppel.

### C. Count Two (Breach of the Implied Covenant of Good Faith and Fair Dealing of the Deed of Trust)[4]

Count Two raises a claim that Bank of America breached the implied covenant of good faith and fair dealing by acting in bad faith when it failed to timely make inspections and appraisals after the fire, and also when it withheld the insurance proceeds. In California, "[t]he covenant of good faith and fair dealing [is] implied by law in every contract [and] exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 350 (2000) (citations omitted). Because it "is an implied-in-law term of the contract . . . its breach will always result in a breach of the contract," even if "[t]he same conduct does not necessarily result in a

---

[4] Count Two also appears to allege a breach of the implied covenant contained in the Promissory Note. For the reasons stated with respect to Count One, those allegations are insufficient in this Rule 12(b)(6) motion, and are dismissed without leave to amend.

breach of . . . a consensual contract term." *Careau*, 222 Cal. App. 3d at 1393 n.16 (citing *Schoolcraft*, 81 Cal. App. 3d at 80–81). However, "[t]he covenant . . . cannot be endowed with an existence independent of its contractual underpinnings. It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Madison v. Fonar Corp.*, 467 Fed. Appx. 681, 683 (9th Cir. 2012) (quoting *Guz*, 24 Cal. 4th at 349–50 (internal citations and quotation marks omitted)); *1231 Euclid Homeowners Ass'n. v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1021 (2006) ("Absent that contractual right . . . the implied covenant has nothing upon which to act as a supplement.").

Here, Music's implied covenant claim alleges that Bank of America acted in bad faith when it failed to timely inspect and appraise the Property after the fire. However, for the reasons discussed in Count One, Music fails to set forth the existence of a contractual obligation on the part of the Bank to provide timely inspections and appraisals. "[T]o establish a breach of the implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." *Gorton v. Wells Fargo Bank NA*, No. SACV 12-1245 JVS (MLGx), 2012 U.S. Dist. LEXIS 168158, *18–19 (C.D. Cal. Nov. 27, 2012) (citing *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031–32 (1992)). In the absence of a contractual provision here requiring Bank of America to undertake timely inspections and appraisals, there can be no breach of the implied covenant. Accordingly, to the extent Music alleges an implied covenant claim with respect to inspections or appraisals, it is dismissed without leave to amend.

Next, Music's implied covenant claim with respect to the Bank's withholding is also problematic. He alleges that the Bank acted in bad faith by failing to release the insurance proceeds. But, as discussed above, when Bank of America withheld the proceeds to pay down Music's outstanding debt, it was exercising agreed-upon contractual rights reserved in Section 5 of the Deed. The Deed permitted Bank of America to retain the proceeds if its security interest was impaired. Because Music already stood in default on his loan by the time the parties received the insurance pay-off, Section 5 permitted Bank of America withhold that amount. As a result, Music may not invoke the implied covenant to alter the express contractual obligations set forth in the

16

Deed, nor may he use it to impose new substantive duties the parties had not envisioned at the time of contract formation. *Madison*, 467 Fed. Appx. at 683. Because he seeks to do so here, his implied covenant claim with respect the Bank's withholding is also dismissed without leave to amend.

## IV. CONCLUSION

For the reasons discussed above, the Court HEREBY ORDERS that:

(1) The First Amended Complaint is DISMISSED with prejudice as to Defendants Bank of America, NA and BAC Home Loans Servicing, LP.

(2) Having been advised that Plaintiff and Defendant Bayview Loan Servicing, LLC have agreed to a settlement of this case, the First Amended Complaint is DISMISSED with prejudice as to Bayview Loan Servicing, LLC; provided, however, that if either party hereto shall certify to this Court, within thirty (30) days, with proof of service of a copy thereon to opposing counsel, that the agreed consideration for said settlement has not been delivered over, the foregoing Order as to Plaintiff and Bayview Loan Servicing, LLC shall stand vacated and this case shall forthwith be restored to the calendar to be set for trial.

**IT IS SO ORDERED.**

Dated: December 9, 2015

JOSEPH C. SPERO
Chief Magistrate Judge